# EXHIBIT "A"

# DILLON McCANDLESS KING COULTER & GRAHAM L.L.P.
### ATTORNEYS AT LAW

THOMAS W. KING III
JAMES P. COULTER
DONALD P. GRAHAM
MICHAEL D. HNATH
MATTHEW F. MARSHALL
THOMAS E. BRETH
RONALD T. ELLIOTT
RONALD N. REPAK
JORDAN P. SHUBER
ANDREA C. PARENTI

ROBERT W. GALBRAITH
ANTHONY W. COSGROVE
SOPHIA V. BENOIT*
ERIC M. DiVITO**
CARL A. FEJKO
JESSICA L. TULLY
KRISTEN P. STOKES

THOMAS J. MAY, Of Counsel
MARY JO DILLON, Of Counsel
STEPHENIE G.A. SCIALABBA, Of Counsel
D. LAWTON STOKES, Of Counsel

*ALSO ADMITTED IN FLORIDA
**ALSO ADMITTED IN WEST VIRGINIA

128 WEST CUNNINGHAM STREET
BUTLER, PENNSYLVANIA 16001

(724) 283-2200
FACSIMILE (724) 283-2298

RECEIVED

AUG 1 3 2025

Selective Insurance
Corporate Legal Department

CRANBERRY TOWNSHIP OFFICE:

600 CRANBERRY WOODS DR., STE. 175
CRANBERRY TWP., PA 16066
(724) 776-6644
FACSIMILE (724) 776-6608

EBENSBURG OFFICE:

313 WEST HIGH STREET, STE. 209
EBENSBURG, PA 15931
(814) 478-2220
FACSIMILE (814) 478-2226

August 5, 2025

*Via USPS – Certified Mail – Return Receipt Requested*
Selective Insurance Company of America
40 Wantage Ave
Branchville, NJ 07890

> Re:  **Woda Construction, Inc. v. J&J Sons Drywall, LLC et al., //
> Case No. 2025-SU-002772 // York County, Pennsylvania**

Dear Sir/Madam,

Enclosed please find a copy of the Complaint filed in the Court of Common Please of York County, Pennsylvania. You should deliver this to your attorneys at your earliest convenience.

Please contact me should you have any questions.

Very Truly Yours,

**DILLON McCANDLESS KING COULTER & GRAHAM, LLP**

Ronald T. Elliott

Enclosure
Cc:  Woda Copper Companies, Inc
William Mandia, Esq.

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ York _____ **County**

| | |
|---|---|
| **For Prothonotary Use Only:** | RECEIVED |
| Docket No: | AUG 1 3 2025 |

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Selective Insurance
~~This form does not~~ Legal Department

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N A**

**Commencement of Action:**
☒ Complaint ☐ Writ of Summons ☐ Petition
☐ Transfer from Another Jurisdiction ☐ Declaration of Taking

| Lead Plaintiff's Name: WODA CONSTRUCTION, Inc., | Lead Defendant's Name: J&J SONS DRYWALL, LLC |
|---|---|

| Are money damages requested? ☒ Yes ☐ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits ☒ outside arbitration limits |
|---|---|---|

| Is this a *Class Action Suit*? ☐ Yes ☒ No | Is this an *MDJ Appeal*? ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: RONALD T. ELLIOTT

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your **PRIMARY CASE.** If you are making more than one type of claim, check the one that you consider most important.

**S E C T I O N B**

**TORT** (*do not include Mass Tort*)
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☐ Other:
_____
_____

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other:
_____
_____

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:
_____
_____

**CONTRACT** (*do not include Judgments*)
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other
_____
_____
☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other
_____
_____
☐ Other:
_____
_____

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other:
_____
_____

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other
_____
_____
☐ Zoning Board
☐ Other:
_____
_____

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☒ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:
_____
_____

*Updated 1/1/2011*

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772



RECEIVED

AUG 1 3 2025

Selective Insurance
Corporate Legal Department

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

WODA COOPER COMPANIES, INC.,
WODA CONSTRUCTION, INC.,
WODA COOPER GENERAL
PARTNER, LLC; and KELLINGER
GREENE GP, LLC,

Plaintiffs,

v.

J & J SONS DRYWALL, LLC, and
SELECTIVE INSURANCE COMPANY OF
AMERICA,

Defendants.

Case No. _____

CIVIL ACTION

Complaint

Filed on behalf of:
Woda Cooper Companies, Inc., Woda
Construction, Inc., Woda Cooper General
Partner, LLC, and Kellinger Greene GP, LLC.

Counsel of Record for Plaintiffs:

Ronald T. Elliott, Esq.
Pa. I.D. No. 71567

Dillon McCandless King
Coulter & Graham, L.L.P.
128 West Cunningham Street
Butler, PA 16001
(724) 283-2200 Telephone
(724) 283-2298 Facsimile
relliott@dmkcg.com Email

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

| | |
|---|---|
| WODA COOPER COMPANIES, INC., WODA CONSTRUCTION, INC., WODA COOPER GENERAL PARTNER, LLC; and KELLINGER GREENE GP, LLC, | Case No._____ |
| | CIVIL ACTION |
| Plaintiffs, | |
| | Complaint |
| v. | |
| | Filed on behalf of: |
| J & J SONS DRYWALL, LLC, and SELECTIVE INSURANCE COMPANY OF AMERICA, | Woda Cooper Companies, Inc., Woda Construction, Inc., Woda Cooper General Partner, LLC, and Kellinger Greene GP, LLC. |
| Defendants. | |

### NOTICE TO DEFEND
Pursuant to PA RCP No. 1018.1

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE OF THE
YORK COUNTY BAR ASSOCIATION
YORK COUNTY BAR CENTER

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

137 EAST MARTKET STREET
YORK, PENNSYLVANIA 17401
TELEPHONE: (717) 854-8755

Effective September 1, 2003 Complaint

## EN LA CORTE DE ALEGATOS COMUN DEL CONDADO DE YORK,PENNSYLVANIA
### DIVISION CIVIL

### AVISO PARA DEFENDER
Conforme a PA RCP Num. 1018.1

USTED HA SIDO DEMANDADO/A EN LA CORTE. Si usted desea defender conta la demanda puestas en las siguientes paginas, usted tienen que tomar action dentro veinte (20) dias despues que esta Demanda y Aviso es servido, con entrando por escrito una aparencia personalmente o por un abogado y archivando por escrito con la Corte sus defensas o objeciones a las demandas puestas en esta contra usted. Usted es advertido que si falla de hacerlo el caso puede proceder sin usted y un jazgamiento puede ser entrado contra usted por la Corte sin mas aviso por cualquier dinero reclamado en la Demanda o por cualquier otro reclamo o alivio solicitado por Demandante. Usted puede perder dinero o propiedad o otros derechos importante para usted.

USTED DEBE LLEVAR ESTE PAPEL A SU ABOGADO ENSEGUIDA. SI USTED NO TIENE UN ABOGADO, VAYA O LLAME POR TELEFONO LA OFICINA FIJADA AQUI ABAJO. ESTA OFICINA PUEDE PROVEERE CON INFORMACION DE COMO CONSEGUIR UN ABOGADO.

SI USTED NO PUEDE PAGARLE A UN ABOGADO, ESTA OFICINA PUEDE PROVEERE INFORMACION ACERCA AGENCIAS   QUE PUEDAN OFRECER SERVICIOS LEGAL A PERSONAS ELIGIBLE AQ UN HONORARIO REDUCIDO O GRATIS.

SERVICIO DE REFERIDO A ABOGADO
COLEGIO DE ABOGADOS DEL CONDADO DE YORK
ABOGACIA DEL CONDADO DE YORK
CALLE MARKET #137 ESTE
YORK, PENNSYLVANIA 17401
TELEFONO: (717) 854-8755

Efectivo 1 de septiembre, 2003 Queja

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

## IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

|  |  |
|---|---|
| WODA COOPER COMPANIES, INC., WODA CONSTRUCTION, INC., WODA COOPER GENERAL PARTNER, LLC; and KELLINGER GREENE GP, LLC, | RECEIVED<br><br>AUG 1 3 2025<br><br>Case No._____ Selective Insurance Corporate Legal Department<br><br>CIVIL ACTION |
| Plaintiffs, |  |
| v. | Complaint |
| J & J SONS DRYWALL, LLC, and SELECTIVE INSURANCE COMPANY OF AMERICA, | Filed on behalf of: Woda Cooper Companies, Inc., Woda Construction, Inc., Woda Cooper General Partner, LLC, and Kellinger Greene GP, LLC. |
| Defendants. |  |

### COMPLAINT

Plaintiffs, Woda Cooper Companies, Inc, Woda Construction, Inc., Woda Cooper General Partner, LLC, and Kellinger Greene GP, LLC, ("Plaintiffs") by and through their attorneys, Dillon McCandless King Coulter & Graham, bring this Complaint against Defendants J & J Sones Drywall, LLC and Selective Insurance Company of America, ("Defendants") seeking declaratory judgment for indemnification and defense, and money damages, incurred as a result of a workplace accident and breach of contract as more fully set forth herein.

### PARTIES

1.    Plaintiff, Woda Cooper Companies, Inc is an Ohio corporation with a principal place of business at 500 South Front Street, 10th Floor, Columbus, Ohio 43215 and is an affiliated company of Woda Construction, Inc.

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

2.      Plaintiff, Woda Construction, Inc. is an Ohio corporation with a principal place of business at 500 South Front Street, 10th Floor, Columbus, Ohio 43215.

3.      Plaintiff, Woda Cooper General Partner, LLC, is an Ohio Limited Liability Company with a principal place of business at 500 South Front Street, 10th Floor, Columbus, Ohio 43215.

4.      Plaintiff, Kellinger Greene GP, LLC, is an Ohio Limited Liability Company with a principal place of business at 500 South Front Street, 10th Floor, Columbus, Ohio 43215, is the General Partner in Kellinger Greene Limited Partnership, the owner of the property located at 572 Kellinger Drive, Lewisberry, York County, Pennsylvania.

5.      Defendant, J & J Sons Drywall, LLC ("J & J") is a Pennsylvania Limited Liability Company with a principal place of business at 2302 Edgewood Road, Harrisburg, Dauphin County, Pennsylvania.

6.      Defendant, Selective Insurance Company of America, ("Selective") is a business entity formed under the laws of New Jersey with a principal place of business at 40 Wantage Avenue, Branchville, New Jersey 07890-1000.

**JURISDICTION AND VENUE**

7.      Venue is proper in York County, because a substantial part of the events giving rise to the claims at issue in this Complaint arose in York County.

**STATEMENT OF FACTS**

8.      Plaintiff Woda Construction, Inc. ("WCI") is in the business of constructing and/or managing affordable homes at various locations throughout eastern and midwestern parts of the United States.

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

9.      Plaintiffs are in the business of developing, constructing and/or owning and

operating affordable apartment communities at various locations throughout the eastern and

midwestern parts of the United States.

10.     WCI was the General Contractor on a release estate development consisting of

one, two and three-bedroom apartments located at 572 Kellinger Drive, Lewisberry, York

County, Pennsylvania, commonly known as "Kellinger Greene".

11.     Sub-contractors were engaged by WCI for work on the Kellinger Greene Project.

12.     WCI entered into a Subcontract with J & J for drywall materials and installation at

the Kellinger Greene project. A copy of the Subcontract, with Addendum, is attached hereto as

*Exhibit A*.

13.     The Subcontract, at Section 6, Subpart J, provides that J & J will:

> indemnify, defend and hold harmless Woda Construction Inc., Owner, Architect,
> Engineers, Architect's consultants, and agents and employees of any of them from
> and against claims, damages, losses and expenses, including but not limited to
> attorneys' fees, arising out of or resulting from performance of the Work,
> provided that such claim, damage, loss or expense is attributable to bodily injury,
> sickness, disease or death, or to injury to or destruction of tangible property (other
> than the work itself), but only to the extent caused by the negligent acts or
> omissions of the Subcontractor, a Sub-Subcontractor, anyone directly or indirectly
> employed by them or anyone for whose acts they may be liable, regardless of
> whether or not such claim, damage, loss or expense is caused in part by a party
> indemnified hereunder. Such obligation shall not be construed to negate, abridge,
> or reduce other rights or obligations of indemnity that would otherwise exist as to
> a party or person described in the Section J.

*See Exhibit A.*

14.     Further, the Subcontract under Section 6, Subpart J(3), provides:

> All subcontractors working on the project shall name Woda Construction, Inc.
> and its related entities as an additional insured on a primary basis and must be
> maintained during the statute of limitations where work is being performed.

*See Exhibit A.*

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

15.    WCI's related entities include, but are not limited to, Woda Cooper Companies,

Inc., Woda Cooper General Partner, LLC, and Kellinger Greene GP, LLC.

16.    Section 13 of the Subcontract, titled INSURANCE, requires that upon execution,

and prior to the commencement of the Subcontractor providing any work or services for the

project, the Subcontractor shall carry commercial general liability insurance "naming the

Contractor and the Owner as Additional Insureds thereunder." *See Exhibit A.*

17.    Further, "[a]dditional insured coverage shall apply as primary insurance with

respect to any other insurance afforded to Owner and Contractor." *See Exhibit A.*

18.    J & J executed the Subcontract and agreed to the terms on September 25, 2020.

19.    On January 15, 2021, Paul Corrigan, a worker for a drywall supplier, injured

himself when delivering drywall to one of the townhomes at Kellinger Greene and suffered

injuries as a result of a fall.

20.    Paul Corrigan filed suit on September 29, 2022 against Plaintiffs and J & J for

negligence in York County at docket number 2022-SU-002344 (hereinafter referred to as the

"Corrigan Case").

21.    When Woda Construction, Inc. pursued indemnification and defense for itself and

its related entities from J & J, J & J's insurance carrier, Selective Insurance Company of America

("Selective") informed Woda Construction, Inc that while the subcontract indicates that Plaintiffs

"shall be named as additional Insured under the policy", "[T]he contract does not call for

Additional Insured status to be on a primary and non-contributory basis." A copy of Selective's

Communication dated March 2, 2023 is attached hereto as *Exhibit B.*

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

22.     Selective also informed Plaintiffs that it would need more discovery to reconsider the defense and indemnification request. *See Exhibit B.*

23.     Due to the filing of the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case, in York County, Pennsylvania, an actual and continuing controversy exists between Plaintiffs and Defendants regarding their respective rights and obligations under the Subcontract agreement.

### CLAIMS FOR RELIEF

### COUNT I – Declaratory Judgment
Plaintiffs v. Defendants

24.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

25.     The Declaratory Judgment Act allows courts to declare rights, status, or other legal relations whether or not further relief is or could be claimed. 42 Pa.C.S. §§7531-7541.

26.     To bring a declaratory judgment action, there must exist an actual controversy and it is an appropriate remedy only where a case presents antagonistic claims indicating imminent and inevitable litigation. *Green v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 158 A.3d 653, 659 (Pa. Super. 2017) (citing *Bromwell v. Michigan Mut. Ins. Co.*, 716 A.2d 667, 670 (Pa. Super. 1998)).

27.     An actual controversy exists between Plaintiffs and Defendants.

28.     The controversy concerns Defendants' obligation to defend and indemnify Plaintiffs under the Subcontract in connection with the workplace injury that occurred while drywall was being delivered to the Kellinger Greene townhome.

29.     A declaratory judgment will resolve the controversy between the parties.

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

30.     As part of the Subcontract Agreement, Plaintiffs are entitled to indemnification

and defense for the action in York County Court of Common Pleas under docket number 2022-

SU-002344.

31.     Due to Defendants' denial of coverage, Plaintiffs have engaged counsel to defend

them in the Corrigan Case.

32.     Plaintiffs have expended resources in the defense of the Corrigan Case.

33.     Plaintiffs tendered the defense of the Corrigan Case to Defendant, Selective

through J & J, which tender was denied by Selective's Litigation Specialist, James Kirk. *See*

*Exhibit B.*

34.     Defendants are obligated to reimburse Plaintiffs for any and all amounts spent in

the defense of the Corrigan Case litigation, together with costs of defense moving forward, and

payment and satisfaction of any settlement, verdict, or judgment amount entered in favor of any

party and against Plaintiffs, or any one Plaintiff.

35.     The controversy is within this Court's jurisdiction as the place of the injury and

the location of Kellinger Greene is located within this Court's jurisdiction.

36.     This Court has the authority to declare the rights and obligations of the parties

under the Subcontract agreement.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment declaring that

Selective Insurance Company of America and/or J & J Drywall must defend Plaintiffs in the

*Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case; that Selective Insurance Company

of America and/or J & J Drywall are responsible for any settlement/verdict/judgment entered

against Plaintiffs in the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case; that

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Selective Insurance Company of America and/or J & J Drywall must reimburse Plaintiffs for any and all fees, costs, and/or expenses incurred in the defense of the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case; and, such other relief as this Court deems appropriate.

### COUNT II – Breach of Contract

Plaintiffs v. J & J Sons Drywall, Inc.

37.     Plaintiffs incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

38.     Defendant J & J entered into an enforceable Subcontract with Plaintiff WCI.

39.     A breach of contract claim requires a plaintiff plead: 1) the existence of a contract, including its essential terms; 2) the defendant's breach of duty imposed by the terms; and 3) resultant damages. *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1262 (Pa. Super. 2017).

40.     The Subcontract is valid and exists in writing. *See Exhibit A.*

41.     The Defendant, J & J, has breached the terms of the contract by failing to properly ensure that it carried the proper insurance as required by the Subcontract.

42.     In the alternative, if J & J did not secure the proper insurance coverage for Plaintiffs required under the terms of the Subcontract, then J & J is liable to Plaintiffs for any costs, fees and expenses incurred by Plaintiffs in the defense of the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case.

43.     The Contract had no ambiguity as to the duties of J & J to indemnify, defend and hold harmless Woda Construction, Inc. and related entities in the event of a workplace accident pursuant to Sections 6 and 13 of the Subcontract. *See Exhibit A.*

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

44.     The case of *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* involved a workplace accident when Paul Corrigan, who was employed by a company delivering drywall for J & J at the Kellinger Greene Project, was injured and filed suit in York County seeking damages against Plaintiffs and J & J.

45.     Plaintiffs sought indemnification and defense from Defendant J & J.

46.     Defendant J & J breached the Subcontract by failing to indemnify, defend and hold Plaintiffs harmless in the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* action.

47.     As a result of this breach, Plaintiffs are left to incur the costs of defense in the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case.

48.     Plaintiffs will continue to incur fees, costs and expenses as the litigation in the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case moves forward.

49.     In addition, Plaintiffs face the possibility of incurrent additional fees, costs and expenses in the event of a settlement, verdict, or judgment in the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case.

WHEREFORE, Plaintiffs respectfully request that your Honorable Court enter judgment in favor of Plaintiffs and against Defendant J & J Sons Drywall, LLC, in am amount in excess of this Court's arbitration limits and in such amount as to reimburse Plaintiffs for fees, costs and expenses incurred by Plaintiffs in defending the *Paul Corrigan v. Woda Cooper Companies, Inc., et al.* case; fees, costs, expenses or payments associated with any potential settlement,

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

verdict, or judgment assessed against Plaintiffs associated with the *Paul Corrigan v. Woda*

*Cooper Companies, Inc., et al.*; and, such other relief as this Court deems appropriate.

Respectfully submitted,

DILLON McCANDLESS KING COULTER & GRAHAM, LLP

Ronald T. Elliott
Attorneys for Plaintiffs

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number 2022-SU-002772



WODA CONSTRUCTION, INC.

500 S. Front Street, Floor 10
Columbus, OH, 43215

Office: 614.396.3200

www.wodagroup.com

Addendum to Subcontract
Woda Construction, Inc.

This Addendum to Subcontract (the "Addendum") is entered into effective as of the date of the last signature affixed hereto by and between Woda Construction, Inc., the General Contractor (the "GC"), and **J and J Sons Drywall LLC**, the Subcontractor (the "SC").

WHEREAS, the GC and the SC have entered into a Subcontract for **Drywall Labor & Material**. (the "Subcontract") for the **Kellinger Greene** (The "Project") dated the same date as this Addendum; and

WHEREAS, the parties desire to amend certain terms and conditions of the Subcontract; and

NOW THEREFORE in consideration of the mutual covenants of the parties set forth herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

The Subcontract shall be amended as follows:

1. **Davis Bacon Documents are Attached as "Exhibit B"**, these documents which must be fully executed and returned with the executed subcontract. All Davis Bacon procedures must be strictly followed by all subcontractors and all 2nd tier subcontractors. Noncompliance will delay payment under section 5. A partial payment request shall not be valid until it includes all pertinent Davis Bacon wage documentation. The GC will appoint a Davis Bacon Compliance Officer to this project that will monitor each subcontractor's compliance of these rules.
   - SC will include the Davis Bacon Documents in Exhibit B in all sub-tier subcontracts that it enters into for the completion of its scope of work on this project.
   - SC agrees that none of its workers nor the workers of SC's subcontractors will be independent contractors, i.e., workers that receive a Form 1099 for their work on this project. All workers will be employees of SC or of SC's subcontractors and will have the appropriate legally required taxes withheld from their paychecks.
   - SC agrees that none of its workers nor the workers of SC's subcontractors will be paid in cash or by money order and that should any workers receive cash or money order payment, SC, at its own cost, will pay said workers a second time for the hours that were paid in cash via check, direct deposit or pay card.
   - SC agrees that they will pay their employees that work on site on a weekly basis.

2. **Section 3 Documents are Attached as "Exhibit B"**, these documents which must be fully executed and returned with the executed subcontract. All Section 3 procedures must be strictly followed by all subcontractors and all 2nd tier subcontractors. Noncompliance will delay payment under section 5. GC will appoint a Section 3 Compliance Officer to this project that will monitor each subcontractor's compliance of these rules.

   - SC will include the Section 3 Documents in Exhibit B in all to sub-tier subcontracts that it enters into for the completion of its scope of work on this project.

Offices located in Georgia, Kentucky, Maryland, Michigan and Ohio

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

All other terms, conditions, requirements, and particulars of the Subcontract and Subcontract Documents shall remain as written and shall not be amended by this Addendum.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED THIS ADDENDUM AS OF THE DAY AND YEAR NOTED BELOW:

Subcontractor:
**J and J and Sons Drywall LLC**

By: Owner - Jeffrey Stanton

Its: _____

Date: 9|25|20

General Contractor:
**Woda Construction, Inc.**

By: _____

Its: Project Executive

Date: 9/30/2020

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772



**WODA COOPER COMPANIES**

Woda Construction, Inc
500 South Front Street
10th Floor
Columbus, Ohio 43215

Office: 614.396.3200

www.wodagroup.com

## Woda Construction, Inc.

Date: _8/26/2020_

### Subcontract #:<u>19.0013.012</u>
### <u>Drywall Labor and Material</u>

SUBCONTRACT NUMBER MUST APPEAR ON ALL PAY APPLICATIONS

SUBCONTRACTOR: __J and J Sons Drywall LLC__
Subcontractor Phone: _717-412-7261_ _____ Subcontractor Fax: _____
Subcontractor Address: 2302 Edgewood Rd, Harrisburg, PA 17104
Contact: _Not Specified_ _____ Title _____
GENERAL CONTRACTOR: _Woda Construction, Inc._ **PROJECT:** _Kellinger Greene_
Project address: _572 Kellinger Road Bldg. G_ City: _Lewisberry_ State: _PA_ Zip: _17339-8856_

THIS Subcontract Agreement (hereinafter "Subcontract or "Contract") is entered into and effective as of the date of the last signature affixed hereto by and between **Woda Construction, Inc.**, as the General Contractor (hereinafter "GC") and, as the subcontractor (hereinafter "SC") **J and J and J Sons Drywall LLC.**

For valuable consideration herein named, GC and SC covenant and agree as follows:

### 1.    CONTRACT DOCUMENTS AND DESCRIPTION OF WORK

The Subcontract Documents consist of the following: this Subcontract and all Exhibits to this Subcontract; purchase orders issued in furtherance of this Subcontract; all drawings, plans dated 05/05/2020 and specifications dated 05/05/2020 (and as revised from time to time) detailing the SC's work, Change Orders and Addenda prepared and executed between the GC and SC in accordance with the provisions of this Subcontract; all building codes and standards whether local, statewide or federal applicable to the method, manner and performance of the SC's work and the General and Special Conditions applicable to the Project (hereinafter individually or collectively "Contract Documents").

SC agrees to undertake and furnish all labor, materials, services and equipment necessary to timely and correctly complete its scope of work as set forth and detailed in the Contract Documents and Exhibit A of this Subcontract (hereinafter the "Work" or "Scope of Work"). Unless otherwise specified in the Contract Documents SC shall be responsible for timely securing at its cost all permits, licenses and approvals necessary to complete its Work in conformance with the Contract Documents.

### 2.    SUBCONTRACT SUM

GC agrees to pay the SC for its full, faithful and timely performance of the Work and its satisfaction of all other requirements set forth in the Contract Documents applicable to SC the sum of: **$ 472,454.00 (the "Subcontract Sum").** A Schedule of Values is attached as Exhibit B to this Subcontract. It is intended as a reference but does not impact the amount or time of payments for Work completed by the SC.

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

3.    **COMMENCEMENT & COMPLETION OF WORK**

The Work shall be commenced by the SC no later than **5** days following its receipt of a Notice to Proceed and the Work shall be completed within **156** days of the issuance of the Notice to Proceed (the "Performance Time"), unless extended in accordance with this Subcontract. In performing its Work, SC shall abide by all conditions related to the scheduling of its Work and the Project work as set forth and modified from time to time by the GC.

4.    **SC'S EXAMINATION & INVESTIGATION OF WORK**

SC represents and agrees that it has carefully examined, inspected and investigated the site of the Work, reviewed and examined the Contract Documents and understands its obligations here under, the specifics of its Work and the nature, locality and site of the Work. By executing this Subcontract, the SC represents and warrants that it is properly licensed, qualified and able to perform all of the Work in accordance with this Subcontract and the Contract Documents. The SC agrees and acknowledges that neither the GC nor its representatives have made any representations or given any assurances regarding the accuracy or correctness of any drawings or measurements contained in the Contract Documents relating to SC's Work and that the SC has conducted and is relying on its own measurements and determinations regarding quantities, sizes and site conditions involved in the Work. SC is solely and expressly responsible for its own field and other measurements as well as procuring any other information concerning the site, the Work or the terms of the Contract Documents.

5.    **PAYMENT PROCEDURES**

A.    **Partial Payments.**    In order to receive payment for Work completed SC shall submit to GC a formal payment request using the AIA Document G702 and G703 (example attached as Exhibit C, hereinafter "Payment Request") by the 25th of each month. Said Payment Request shall detail all work that is fixed, in place, shall be accompanied by appropriate lien waivers (partial or final) from SC, its subcontractors and suppliers covering Work and materials for which GC has previously made payment to SC and shall include only those subcontract change orders that have been fully executed by the SC and GC. Subject to the GC's receipt of payment from the Owner for the work set forth in the Payment Request the GC shall remit the approved amount by the 20th of the following month (the "Payment Date"). FORMAL PAYMENT REQUESTS NEED TO BE SUBMITTED TO **THE OFFICE** AT THE ADDRESS ON THE TOP OF PAGE ONE OR SUCH OTHER ADDRESS AS PROVIDED BY GC BY THE 25TH TO BE ELIGIBLE FOR PAYMENT ON THE 20TH OF THE FOLLOWING MONTH. Payment Requests provided to the site superintendent may not be processed. Any Payment Request submittal shall be limited to portions of the Work properly performed, accepted and approved by GC. GC shall retain 10% of any approved Payment Request as Retainage (see 5C below) to be paid as set forth in paragraph 5C of this Contract. In the event the payment request is incomplete by the 25th of the month, the request shall be processed and paid as quickly as possible, however, the GC has no obligation to remit payment on or before the 20th of the following month.

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

B.    **Final Payment.** SC's submittal of its final Payment Request covering completion of all remaining Work shall be accompanied by SC's lien wavier and release as well as lien waivers and releases from all of its subcontractors and suppliers related to Work or materials supplied through the date of the final Payment Request. All properly completed Work set forth in the final Payment Request, provided necessary lien waivers and releases have been supplied shall be remitted as set forth in paragraph 5(a) within thirty (30) days of GC's receipt of payment from the Owner for the Work billed.

With respect to any Partial or Final Payment Request, in the event that: (1) SC fails to obtain appropriate lien waivers and releases for all labor, materials or equipment used in the Work, or (2) SC fails to discharge or obtain a bond against liens or claims arising from its subcontractors or suppliers satisfactory to GC, then GC shall have the right, in its sole discretion, to secure the same on behalf of SC, or otherwise provide for the discharge of all and any such liens, claims or liabilities. In the event the GC undertakes efforts to secure necessary lien waivers payment of its costs and expenses from SC or it may deduct from any Payment Request otherwise owed to SC pursuant to this Subcontract or any other subcontract GC has with SC amounts paid, including, but not limited to, costs, attorney fees, expenses and an 18% overhead or discharge liens or claims related to SC's Work GC shall be entitled to direct fee.

C.    **Retainage**. Ten percent (10%) of all approved partial and final Payment Requests shall be withheld by GC and paid to the SC as follows: within the earliest of either 1 8 0 days of GC's receipt of the Project's Certificate of Substantial Completion; or within 30 days of GC's receipt of final payment from the owner for the Work, and GC's receipt of final lien waivers and releases from SC, SC's subcontractors and suppliers covering all work or materials supplied on the Project. No portion of any retainage shall be released until all warranty claims have been satisfactorily addressed and until SC's Contract scope of work is completed.

D.    **Withholding Payments.** Notwithstanding the payment provisions set forth in paragraphs A, B and C of this Subcontract GC shall have the right, in its sole discretion, to withhold payments to the SC based upon any of the following: (1) SC's defective or improper performance of the Work pursuant to this Subcontract or any other subcontract between the GC and SC not cured under the terms and conditions of the relevant subcontract; (2) unresolved claims of nonpayment by SC's employees, suppliers or subcontractors with respect to their performance of the Work or SC's failure to provide required waivers of lien and releases; (3) claims filed in connection with the Work; (4) damage by SC to another subcontractor's work or that of the GC; (5) costs incurred by GC due to SC's failure to timely perform the Work; (6) SC's failure to maintain insurance coverage in accordance with the terms and conditions he reof; (7) SC's failure to supply an accurate list to GC of its material suppliers, subcontractors and permitted subcontracts or (8) SC's failure to perform any of its other duties or obligations as set forth in the Contract Documents or any other contract between the parties. Any amounts withheld from SC's Payment Requests shall be evidenced by a written Backcharge against amounts otherwise owed to SC (as set forth in paragraph 11 of this Contract). Any amounts so withheld may be used by GC, in its sole discretion, to cure any of the items set forth in subparagraphs 1-8 of paragraph 5D.

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.

ℳᏌᏚ Initial of SC

Page 3 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

E.    **Effect of Partial Payment.** Neither partial payments nor final payment made pursuant to paragraph 5 constitute GC's waiver of SC's obligations with respect to any Work determined to be defective or non-compliant. Likewise utilization of any of the Work of SC does not constitute, in and of itself, GC's acceptance of the same as conforming.

6.    **SC DUTIES**

A.    **Direction of the Work**. The SC shall supervise and direct the Work using its best skill and attention. The SC shall be solely responsible for all construction means, methods, techniques, sequences, and procedures and for coordinating all portions of the Work under this Subcontract with the work of other SC's on the Project as detailed and scheduled from time to time by the GC. SC shall immediately communicate any ambiguity or discrepancy in the Contract Documents including but not limited to the drawings, plans and specifications to the GC. With respect to SC's performance of any Work wherein the Contract Documents are ambiguous or contradictory the SC assumes all risks and shall bear all costs related to correcting the Work should it fail to seek clarification from the GC before undertaking the same.

B    **Materials and Services**. Unless otherwise specifically noted, the SC shall provide and pay for all labor, material, equipment, tools, construction equipment and machinery, temporary electric, transportation, and other facilities and services necessary for the proper execution and completion of the Work. The SC shall provide GC a list of names, addresses, phone numbers, email addresses, and contact persons of all material men (suppliers) and subcontractors engaged by SC in regard to the Work. Copies of all subcontracts entered into by the SC for portions of its Work shall be provided to the GC within three days of their execution by SC. The SC shall also, upon request, provide a list of all its employees working on the Project. SC shall continually update said list as the Work progresses and changes occur. The SC shall not employ any person or retain any subcontractor or material men or company to whom the GC has a reasonable objection. SC shall have its employees work on the project site a minimum of forty (40) hours per week. In situations where the overall schedule is in jeopardy, upon GC's notice, SC shall increase manpower to the levels required to meet the revised schedule.    Rain days or hours or other days or hours delayed for any other reason do not apply toward these work hour requirements.

C.    **Maintaining Good Order**. The SC shall at all times enforce strict discipline and good order among its employees, and shall not employ for the Work any unfit person or anyone not skilled in the task assigned to him.

D.    **Material Warranties**. The SC warrants to the GC that all materials and equipment incorporated into the Work will be new unless otherwise specified in the Contract Documents, and that all Work will be of good quality, free from faults and defects

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
MlS Initial of SC
Page 4 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

and in conformance with the requirements and specifications of the Contract Documents. SC guarantees that all Work performed and installed will meet and comply with all federal, state, county, local and national building codes as well as all other federal requirements including but not limited to those under the American with Disabilities Act ("ADA"), Fair Housing Regulations, and the Uniform Federal Accessibility Standards ("UFAS"). All Work not conforming to these standards will be deemed defective and shall be cured by the SC at SC's expense.

E.   **Taxes & Permits.** The SC shall pay all sales, consumer, use and other similar taxes required by law and shall secure and pay for all permits, fees and licenses necessary for the execution of the Work. SC shall provide all tax forms requested by GC (i.e. IRS form W-9).

F.   **Conformance with Laws.** The SC shall give all notices and comply with all laws, ordinances, rules, regulations and orders regarding the Work, and shall notify the GC if the Contract documents detailing SC's Work are at variance therewith.

G.   **SC's Responsibility.** The SC shall be responsible for the acts and omissions of all its employees and other persons while performing any of the Work of this Subcontract.

H.   **Shop Drawings and Samples.** The SC shall review, stamp with his approval and submit all samples and shop drawings to the GC's or Owner's Project architect or engineer for their approval. The Work shall be performed in accordance with approved samples and show drawings.

I.   **Trash Removal.** The SC at all times shall keep the Work and the project site free from accumulation of waste materials or rubbish during the performance of its Work, at its sole expense. The Work area shall be left in a "broom clean" condition at the end of the day. In the event the SC does not comply with the trash removal policy herein, the GC may have the Work and/or Project site cleaned at a cost of $500 per day for cleanup, such amounts will be deducted from amounts owed to SC under this Subcontract or any other subcontract between GC and SC. Dumpster to be provided by GC.

J.   **Indemnification.** 1. To the fullest extent by law the Subcontractor shall indemnify, defend and hold harmless Woda Construction Inc., Owner, Architect, Engineers, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), but only to the extent caused by the negligent acts or omissions of the Subcontractor, a Sub-Subcontractor, anyone directly or indirectly employed by them or anyone for whose

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
ᗰᗢ  Initial of SC
Page 5 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity that would otherwise exist as to a party or person described in the Section J.

2. In claims against any person or entity indemnified under the Section J. by an employee of the Subcontractor, a Sub-Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under Section J.1.shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Subcontractor or a Sub-Subcontractor under workers' compensation acts, disability benefits acts or other employee benefit acts.

3. ADDITIONAL INSURED: All subcontractors working on the project shall name Woda Construction, Inc. and its related entities as an additional insured on a primary basis and must be maintained during the statute of limitations where work is being performed.

K.    **Clear Title to Material, Trademarks, and Defects,** SC warrants and guarantees: (1) clear title and freedom from defects of the materials furnished for the Work, (2) that such materials are free from any valid claim for patent infringements, (3) that all labels for trademarks affixed to the materials by the SC are free from any valid claim for copyright or trademark infringement, and (4) that the Work will be free of any and all liens, claims, demands and encumbrances whatsoever arising out of SC's performance of the Work, (5) that all state, local and federal taxes have been paid by SC and proof provided to GC.

L.    **Patents and Royalties**. SC shall pay all royalty and license fees, and shall defend all suits or claims for infringement of any patent rights and shall save the GC harmless from loss on account thereof.

M.    **Safety**. SC shall keep and maintain copies of all accident reports or reports of injury which may be prepared relating to SC's employees injured while performing work under this Subcontract for the length of time required by the applicable federal, state, or local law, regulation or ordinance, or for five (5) years, whichever is longer, and upon request will furnish GC with copies of the same. Notwithstanding the foregoing, the SC will promptly furnish the GC with a copy of any notice of accident, injury or death, and notify the GC in any alleged legal claim. SC does hereby assume responsibility for the prevention of accidents to its agents and employees.

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

N. **Contacts**. The SC shall provide the GC with contact information including a fax number and email address for the SC. The SC shall provide to GC in writing upon commencement of its Work hereunder the name and contact information for SC's job foreman/superintendent. SC is under a continuing duty to keep GC informed in writing of any changes regarding its job foreman/superintendent. Failure to comply is a breach of this Agreement.

## 7.   DELAYS BY SC

Upon a failure of the SC to commence the Work as required in paragraph 3 of this Contract or should GC conclude that SC is not prosecuting the Work with due diligence, or is delaying the work of other subcontractors, GC may immediately notify SC of the same by phone, fax or email and SC shall, within forty-eight (48) hours thereafter, be back on schedule with its Work as required by the GC's notice. In the event the SC fails to comply fully with such notice, such failure shall constitute, without excuse or further notice to the SC a breach by SC of the terms of this Subcontract, and GC shall have the rights and remedies provided both herein and by law including, but not limited to, the right to withhold all payments due SC ; the right to assess the SC up to one-half of one percent (5%) of the Subcontract Sum per day liquidated damages; the right to dictate to the SC the number of qualified workers that the SC must have on the job on a daily basis to complete the Work in the time allowed and/or the right to terminate the Subcontract and use the balance of the Subcontract s u m  t o  retain another subcontractor to complete the Work.

## 8.   GUARANTEES

If within one (1) year following the date of; (i) GC's acceptance of the SC's Work (ii) issuance of a final certificate of occupancy for the Project; or (iii) such longer period as is prescribed by law or a specific manufacturer's warranty, or by the terms of any specific warranty provided by SC in connection with this Subcontract, a defect or other problem occurs, the SC shall correct it within 2 days after receipt of a verbal or written notification from the GC. If the problem or defect is deemed an "Emergency", by the GC the SC shall respond as required by the emergency situation. An "Emergency" is classified as any problem that is of a Health or Safety nature. If SC does not respond as set forth herein GC may contract with a third party to complete all necessary work and the SC will be responsible for all costs associated with the repair including costs of the GC to secure the third party.

## 9.   CORRECTION OF DEFECTIVE WORK

SC shall be responsible for remedying any defective Work performed by SC or anyone directly employed by or contracting with SC. Any defective material, or non-conforming material supplied, and any damage or loss to property caused in whole or in part by the negligence or fault of the SC, its associates , employees or subcontractors in connection with the performance of the Work shall be the responsibility of the SC. Said responsibility shall remain whether the defective Work or non-conforming materials have been previously accepted or not.

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
ℳᏟℐ Initial of SC
Page 7 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

10.    **WARRANTIES AND PRODUCT LITERATURE**

SC agrees to provide a minimum one year warranty for all labor related to the SC Scope of Work. SC agrees to provide a minimum one year warranty on all material to be defect free and SC shall provide a longer warranty as required in the Contract Documents. SC shall provide the GC all specification sheets as outlined in the submittal portion of the Scope of Work and shall provide all written manufacturers' warranties on all materials, equipment, etc. as required in the Contract Documents. All manufacturers' warranties shall be assigned by SC to the Owner in writing. In the event the SC does not furnish the information noted herein to the GC within forty eight (48) hours-notice of GC's request, GC

will assess SC a $1,000 per day penalty until SC provides said information. GC may collect information on its own and this does not relieve the SC of the requirements herein.

11.    **WRITTEN CHANGE ORDERS & BACKCHARGES**

GC reserves the right to make changes in the Work, including alteration, reductions, revisions or additions thereto. Upon receipt by SC of GC's notification of a contemplated change, SC shall, if requested by the GC (1) provide an estimate of any decrease or increase in the Contract Price related to the contemplated change; (2) notify GC of any addition or reduction of time the contemplated change will have on the performance of the Work of SC; and (3) advise GC if the contemplated change will likely effect SC's ability to meet the completion dates for the Work as scheduled. If GC so instructs, SC shall suspend work on that portion of the Work effected by a contemplated change, pending GC's decision to proceed with the change. If GC elects to make the change, GC shall issue a notice in the form of a written change order ("Change Order"). SC shall not commence work on any such change until such written Change Order has been issued and executed by the SC and GC. Retainage will be withheld from a Change Order as set forth in paragraph 5. Should SC proceed with any additional work prior to written authorization and approval by GC in the form of a Change Order, the GC shall not be responsible for payment. WRITTEN CONSENT FROM THE GC SHALL BE OBTAINED BY THE SC PRIOR TO ANY ADDITIONAL WORK BEING PERFORMED. ANY ADDITIONAL WORK PERFORMED BY THE SC WITHOUT FIRST RECEIVING A VALIDLY EXECUTED CHANGE ORDER IS AT THE SC'S RISK OF NON-PAYMENT AND DOES NOT CONSTITUTE GC APPROVAL OF THE ADDITIONAL WORK. ANY CHANGE ORDER WILL ONLY BE VALID IF APPROVED IN WRITING BY THE GC'S HOME OFFICE **THE GC'S SITE SUPERINTENDENT IS NOT AUTHORIZED TO SIGN OR APPROVE CHANGE ORDERS AND THE SC WILL NOT BE PAID FOR ANY ADDITIONAL WORK NOT PROPERLY APPROVED BY THE HOME OFFICE.**

Backcharges as that term is used in this Subcontract or in any Scope of Work, are deductions from sums otherwise owed to the SC do to its failure to adhere to its obligations as set forth in this Subcontract or other Contract Documents. Backcharges and other assessments levied against the SC shall be evidenced by a negative Change Order issued to the SC by email and/or facsimile. A negative Change Order does not require execution by the SC to be effective. Any backcharge or assessment set forth in the negative Change Order may include a fifteen percent (15%) charge for GC's processing of the same and be deducted from any amounts remaining under this Subcontract or any other contract of SC with GC. If insufficient amounts remain in the contracts to satisfy said negative Change Order amount the SC shall nonetheless remain liable to GC for payment. In the event the SC disputes said negative Change Order the SC shall have seven (7) business days to provide GC with written notice of the same and its reason for disputing the deduction. Any dispute notice shall be

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.

MᴋS_Initial of SC

Page 8 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

sent by certified mail to the GC's home office. Failure to timely notify GC of any dispute as required herein shall constitute consent to the negative Change Order. In the event the SC timely disputes said negative Change Order, the GC shall review all of the information provided by the SC, reach a conclusion and inform SC of said conclusion within a reasonable time. No dispute of a negative Change Order shall be grounds for the SC to delay or stop its performance of the subcontract Work.

12    **SEPARATE CONTRACTS**

    A.    GC reserves the right to award other contracts or subcontracts in connection with other portions of the project or other work on site.

    B.    SC shall afford other subcontractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their work shall properly connect and coordinate its Work with theirs, and shall indemnify GC against any costs caused by defective or ill-timed work which occurs as a result of SC's failure to do so. SC is totally responsible to coordinate its Work with that of other subcontractors, material men and tradesman on the project as might be directed by the GC. If a conflict occurs on site, the GC, upon notification by the SC, shall resolve the matter and the SC shall comply with the GC's proposed resolution.

13.    **INSURANCE**

    Upon execution of this Agreement, and prior to the Subcontractor's commencing any work or services with regard to the Project, the Subcontractor shall carry commercial general liability insurance on ISO form CG 00 01 10 01 (or a substitute form providing equivalent coverage) and the Subcontractor shall provide the contractor with a Certificate of Insurance and Additional Insured Endorsement on ISO form CG 20 10 11 85 (or a substitute form providing equivalent coverage) or on the combination of ISO forms CG 20 10 10 01 and CG 20 37 10 01 (or substitute forms providing equivalent coverage) naming the Contractor and the Owner as Additional Insureds thereunder. Additional insured coverage shall apply as primary insurance with respect to any other insurance afforded to Owner and Contractor. The coverage available to the Contractor and Owner, as Additional Insureds, shall not be less than $1 million dollars Each Occurrence, $2 million General Aggregate (subject to a per project general aggregate provision applicable to the project), $2 million Products/Completed Operations Aggregate and $1 million Personal and Advertising Injury limits. Such insurance shall cover liability arising from premises, operations, independent contractors, products-completed operations, personal and advertising injury, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract). There shall be no endorsement of modification of the Commercial General Liability form arising from pollution, explosion, collapse, underground property damage or work performed by subcontractors. All coverage shall be placed with an insurance company duly admitted in the State of PA and shall be reasonably acceptable to contractor. All Subcontractor insurance carriers must maintain an A.M. Best rating of "A-" or better. Coverage shall be afforded to the Additional Insureds whether or not a claim is in litigation.

    The insurance coverage required under paragraph 13 shall be of sufficient type, scope, and

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
MCS Initial of SC
Page 9 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

duration to ensure coverage for the Contractor or Owner for liability related to any manifestation date within the applicable statutes of limitation and /or repose which pertain to any work performed by or on behalf of the Contractor or Owner in relation to the Project. * Subcontractor agrees to maintain the above insurance for the benefit of Contractor and Owner for a period of ten years, or the expiration of the Statute of Limitations pursuant to Code of Civil Procedure, Section 337.15, whichever is later.

*This language reflects a Statute of Limitations such as applicable in the State of California. Language for agreements to be executed in each state should follow that state's applicable Statute of Limitations.

Each Certificate of Insurance shall provide that the insurer must give the Contractor at least 30 days' prior written notice of cancellation and termination of the Contractor's coverage thereunder. Not less than two weeks prior to the expiration, cancellation or termination of any such policy, the Subcontractor shall supply the Contractor with a new and replacement Certificate of Insurance and Additional Insured endorsement as proof of renewal of said original policy. Said new and replacement endorsements shall be similarly endorsed in favor of Contractor and Owner as set forth above.

Additionally, and prior to commencement of the Work, the Subcontractor shall provide the Contractor with a Certificate of Insurance showing liability insurance coverage for the Subcontractor and any employees, agents, or Sub-Subcontractors of the Subcontractor for any Workers' Compensation, Employer's Liability and Automobile Liability. In the event any of these policies are terminated, Certificates of Insurance showing replacement coverage shall be provided to Contractor. Coverages shall be no less than the following:

Workers' Compensation and Employers' Liability Insurance: As required by law and affording thirty (30) days written notice to Contractor prior to cancellation or non-renewal, providing coverage of not less than $1,000,000 for bodily injury caused by accident and $1,000,000 for bodily injury by disease.

Business Auto Liability Insurance: Written in the amount of not less than $1,000,000 each accident.

Waiver of Subrogation: Subcontractor shall obtain from each of its insurers a waiver of subrogation on Commercial General Liability in favor of Contractor and Owner with respect to Losses arising out of or in connection with the Work.

## 14. **DEFAULT AND TERMINATION**

If SC: i) fails to perform its Work in conformance with the Contract Documents; ii) fails to perform its Work in a manner consistent with the project work schedule as amended from time to time by the GC; iii) becomes insolvent, has a receiver appointed, enters into a bankruptcy or assigns any portion of the subcontract Work without the GC's prior written approval; iv) fails to comply with any other requirements of this Subcontract or any other subcontract entered into with the GC; v) fails to provide the GC, upon request, with necessary assurances regarding SC's ability to fulfill remaining

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
Initial of SC
Page 10 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Work under the Contract Documents in a timely manner, the GC shall have the following rights exercisable individually or in combination:

A.      GC, without prejudice to any other right or remedy, may terminate this Subcontract upon written notice to SC. by fax, email or phone. If so terminated SC shall, if required in the termination notice, immediately withdraw from the Project site, and remove such materials, equipment, tools, and instruments used by the SC in the performance of the Work as directed by the GC, or GC's representative; or

B.      GC shall have the right to unilaterally reduce the Work of the SC without terminating this Subcontract and retain others (or use its own manpower) to complete the portions of the Work removed from the SC. Upon notice SC shall fully cooperate with third parties performing the Work removed and coordinate its remaining Work with that of the party retained.

Upon any termination of the SC the GC may withhold any payments owed to the SC until all remaining Work of the SC has been completed by the GC or any subcontractor hired to replace the SC. Once the GC has made payment to all subcontractors, laborers and suppliers for the completion of the Work of the defaulting SC, and recovered all amounts incurred by the GC in securing the completion of the Work, including all reasonable costs, expenses and fees (including attorney fees) and office overhead expenses associated with the termination of the SC and completion of the SC's unfinished Work any remaining amounts in the SC's subcontract shall be paid to the SC for Work properly completed by the SC provided the SC has supplied all documents required pursuant to paragraph 5 of the Subcontract.

Should amounts remaining in the SC's subcontract be insufficient to pay all amounts owed for completion of the Work and for GC's expenses and costs associated with securing the completion of the Work SC shall be liable for the deficiency. Any amounts owed to the SC under any other contract with the GC may be used to recover deficiency amounts owed hereunder.

15.   **DISPUTE RESOLUTION/JURISDICTION/WAIVER OF LIEN RIGHTS**

GC and SC acknowledge and agree that this Subcontract was entered into in Franklin County, Ohio. The parties expressly agree and acknowledge that any litigation instituted by a party in any way related to or arising from the obligations set forth in this Subcontract or actions taken in reliance upon this Subcontract must be commenced and maintained in the courts of the county local to the Project .   Both parties acknowledge and agree to the waiver of any right to a jury trial with respect to any litigation arising hereunder.

THE SC AND THE GC UNDERSTAND THEY ARE WAIVING THEIR RIGHT TO A TRIAL BY JURY BUT DO SO HAVING HAD THE OPPORTUNITY TO REVIEW SAID WAIVER AND ITS IMPORT WITH COUNSEL OF THEIR CHOOSING.

16.   **ASSIGNMENT OF SUBCONTRACT**

SC shall not assign this Subcontract without the prior written consent of GC. SC shall not

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
MLS Initial of SC
Page 11 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

subcontract with a third party for the performance of any of the Work without the prior written consent of the GC.

17.    **PARTIAL INVALIDITY**

If any provision of this Subcontract is adjudicated to be illegal or unenforceable, all other provisions of this Subcontract shall remain unaffected to the extent permitted by law.

18.    **ENTIRE SUBCONTRACT**

This Subcontract and the Contract Documents state the entire agreement between the parties hereto, and GC is not, and shall not be, bound by any proposals, bids, stipulations, representations, subcontracts, or promises, oral or written, not expressly included in this Subcontract. Unless otherwise specified herein, no modification or rescission of this Subcontract shall be binding on GC unless in writing and executed by GC and SC. **GC'S SI TE SUPERINTENDENT IS NOT AUTHORIZED TO MODIFY THIS SUBCONTRACT AND SC MAY NOT RE LY UPON ANY PURPORTED MODI FICATION ENTERED INTO BY GC'S SITE SUPERINTENDENT.**

19.    **EXECUTION**

The submission of this Subcontract by GC for examination or execution by SC does not constitute an option or offer to enter into this Subcontract upon the terms and conditions contained herein or a reservation of this Subcontract in favor of the SC, rather, it is intended hereby that this Subcontract shall only become effective upon the execution of the same by GC and delivery of a fully executed counterpart hereof to SC.

20.    **BLUEPRINTS AND SPECIFICATIONS**

SC acknowledges all Work is to be performed in accordance and in full compliance with The Contract Documents as prepared by Project Architect and/or Engineer and revised from time to time.

21.    **NOTICE**

Unless otherwise set forth herein, any notice required herein by the GC to the SC shall be in the form of a facsimile or email to the number or address provided by the SC. Any notice from the SC to the GC shall be in the form of a postage prepaid by certified mail, return receipt requested, addressed to the GC, Attn: Subcontract Administrator.

22.    **MANDATORY MEETINGS AND SC EMPLOYEE SIGN IN**

The SC's foreman or supervisor must attend a weekly job site meeting after receipt of Notice to Proceed is sued by GC to SC. The SC will attend these meetings until acceptance by GC of SC's scope of Work. These meeting will be held each week on a day and time determined by the GC's Project superintendent. The purpose of said meeting is to eliminate communication problems on the project and to discuss relevant project issues. A Backcharge of Five Hundred dollars ($500) shall be levied against SC for each meeting missed during the mandatory attendance period.

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.

ᗰℒ⑀ Initial of SC

Page 12 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

All employees of the SC and of the SC's subcontractors are required to sign in at the GC field office daily. In the event the SC fails to enforce this with the employees, the SC (after one 48 hour notice) will be levied a $100 per employee per day penalty.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED THIS SUBCONTRACT AS OF THE DAY AND YEAR FIRST ABOVE WRITTEN.

SUBCONTRACTOR

J and J and Sons Drywall LLC

2302 Edgewood Rd

Harrisburg, PA 17104

BY: _Jeffrey Stanton_

Its: _____

Witness: _MJSSL_____

Date: _9 - 25 - 2020_

GENERAL CONTRACTOR

Woda Construction, Inc.

500 S. Front Street Floor 10

Columbus, OH 43215

BY: _Joseph P Dolesar_

Its: _Project Executive_____

Witness: _Afrah Abdulkadir___

Date: _9/30/2020_

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
MtS Initial of SC
Page 13 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

## SAFETY REQUIREMENTS

SC is required to provide to GC a workable schedule of a safety program and conduct weekly safety meetings. A report for each meeting shall be provided to the GC superintendent of the SC employees present and minutes of the discussion. Each SC shall provide the name of a responsible person who is in charge of the crew's safety on the job site. This person is responsible for conducting job safety meeting and reporting to GC superintendent in writing who attended and when. Also this person is responsible for correcting any safety problems that GC's safety representative or others might notice. Any situation that is tagged as dangerous must be corrected or eliminated as quickly as possible to allow the work progress to continue as scheduled. Each SC's safety designee is to report to GC superintendent any safety situation that could be or is dangerous to work safety. Each SC must keep a complete list of M.S.D.S. sheets that they use on the job site. SC shall supply a list of M.S.D.S sheets to the GC superintendent of the hazardous materials that is being used to site. All hazardous materials must be handled according to manufacturer's recommendations. SC to have in its possession an approved First Aid Kit that is readily available for use in case of accident. SC safety designee must know the emergency numbers of rescue and hospital responding to the job site. All safety equipment and/or personal safety equipment must be provided by the SC for their employees to meet all safety codes. SC to provide to their safety designee a printed accident program supplied to GC prior to work start. SC must have a Hazardous Communication Program installed and have employees carry out the program.

## ACCIDENT PREVENTION PROGRAM

An SC safety designee shall be appointed for the Project jobsite. A job description of SC Safety Designee shall be provided to the GC. SC safety designee shall report to GC Superintendent on all safety reports to be filed at site office. The safety designee will normally be the person in charge of the jobsite. The safety designee is specially responsible for implementing the accident prevention program. Prior to the start of work on a jobsite the safety designee shall evaluate the site for any unsafe conditions, regardless of who created the conditions that the SC personnel might be exposed to while on the jobsite. The safety designee will then take appropriate steps to eliminate the SC employee exposure to any unsafe conditions. Prior to the initiation of any work by SC employees, the safety designee shall instruct the employees as to site specific hazards. As jobs change, site specific instructions will also change. The safety designee will hold weekly safety meetings will all SC employees. These meetings may be in the form of one-on-one contacts or group meetings. The safety designee shall inspect the jobsite at least daily. This may be performed as a separate inspection or while the safety designee is engaged in other supervisory duties. The safety designee shall insure that first aid supplies are available AT ALL TIMES on the job-site when required. The safety designee will ensure that appropriate medical treatment is available for the employees. The safety designee shall utilize a safety and health checklist during the evaluation of the job-site with the understanding that any unsafe conditions, not covered by the checklist, shall be corrected.

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
(JKS Initial of SC
Page 14 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

## Schedule of Values
### 19.0013. - Kellinger Greene

| Item | Phase | Description | Retainage % | Amount |
|------|-------|-------------|-------------|--------|
| 1 | 009.241 | Building A - Metal Material | 10% | $ 3,297.00 |
| 2 | 009.241 | Building A - Metal Labor | 10% | $ 8,198.00 |
| 3 | 009.241 | Building A - Drywall Material | 10% | $ 27,293.00 |
| 4 | 009.241 | Building A - Drywall Labor | 10% | $ 29,162.00 |
| 5 | 009.241 | Building A - Hard Ceiling Drywall Above Material | 10% | $ 1,586.00 |
| 6 | 009.241 | Building A - Hard Ceiling Drywall Above Labor | 10% | $ 2,050.00 |
| 7 | 009.241 | Building B - Metal Material | 10% | $ 835.00 |
| 8 | 009.241 | Building B - Metal Labor | 10% | $ 969.00 |
| 9 | 009.241 | Building B - Drywall Material | 10% | $ 28,110.00 |
| 10 | 009.241 | Building B - Drywall Labor | 10% | $ 32,503.00 |
| 11 | 009.241 | Building B - Hard Ceiling Drywall Above Material | 10% | $ 396.00 |
| 12 | 009.241 | Building B  Hard Ceiling Drywall Above Labor | 10% | $ 481.00 |
| 13 | 009.241 | Building C - Metal material | 10% | $ 835.00 |
| 14 | 009.241 | Building C - Metal Labor | 10% | $ 969.00 |
| 15 | 009.241 | Building C - Drywall Material | 10% | $ 28,110.00 |
| 16 | 009.241 | Building C - Drywall Labor | 10% | $ 32,503.00 |
| 17 | 009.241 | Building C - Hard Ceiling Drywall Above Material | 10% | $ 396.00 |
| 18 | 009.241 | Building C - Hard Ceiling Drywall Above Labor | 10% | $ 481.00 |
| 19 | 009.241 | Building D - Metal Material | 10% | $ 835.00 |
| 20 | 009 241 | Building D - Metal Labor | 10% | $ 969.00 |
| 21 | 009.241 | Building D - Drywall Material | 10% | $ 28,110.00 |
| 22 | 009.241 | Building D - Drywall Labor | 10% | $ 32,503.00 |
| 23 | 009.241 | Building D - Hard Ceiling Drywall Above Material | 10% | $ 396.00 |
| 24 | 009.241 | Building D - Hard Ceiling Drywall Above Labor | 10% | $ 481.00 |
| 25 | 009.241 | Building E - Metal Material | 10% | $ 3,284.00 |
| 26 | 009.241 | Building E - Metal Labor | 10% | $ 7,095.00 |
| 27 | 009.241 | Building E - Drywall Material | 10% | $ 24,983.00 |
| 28 | 009.241 | Building E - Drywall Labor | 10% | $ 26,218.00 |
| 29 | 009.241 | Building E - Hard Ceiling Drywall Above Material | 10% | $ 1,800.00 |
| 30 | 009.241 | Building E - Hard Ceiling Drywall Above Labor | 10% | $ 2,358.00 |
| 31 | 009.241 | Building F - Metal Material | 10% | $ 3,297.00 |
| 32 | 009.241 | Building F - Metal Labor | 10% | $ 8,198.00 |
| 33 | 009.241 | Building F - Drywall Material | 10% | $ 27,293.00 |
| 34 | 009.241 | Building F - Drywall Labor | 10% | $ 29,162.00 |
| 35 | 009.241 | Building F - Hard Ceiling Drywall Above Material | 10% | $ 1,586.00 |
| 36 | 009.241 | Building F - Hard Ceiling Drywall Above Labor | 10% | $ 2,050.00 |
| 37 | 009.241 | Building G - Metal Material | 10% | $ 2,741.00 |
| 38 | 009.241 | Building G - Metal Labor | 10% | $ 3,939.00 |
| 39 | 009.241 | Building G - Drywall Material | 10% | $ 31,948.00 |
| 40 | 009.241 | Building G - Drywall Labor | 10% | $ 32,828.00 |

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
MLS _Initial of SC
Page 15 of 16

Exhibit A

| 41 | 009.241 | Building G - Hard Ceiling Drywall Above Material | 10% | $ 951.00 |
| 42 | 009.241 | Building G - Hard Ceiling Drywall Above Labor | 10% | $ 1,255.00 |

**TOTAL $ 472,454.00**

THIS CONTRACT IS SUBJECT TO THE ADDITIONAL CONDITIONS ATTACHED HERETO.
MLS Initial of SC
Page 16 of 16

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

# Exhibit A
## Scope of Work
## Drywall Labor & Material
## Kellinger Greene
### Page 1 of 7

Subcontractor ("SC") has entered into a Subcontract with the General Contractor ("GC") attached hereto. SC shall secure and provide all necessary permits, licenses (both local and state), labor, materials, supervision and equipment and pay all incidental expenses and taxes, necessary to perform the Drywall Labor & Material Scope of Work in accordance with the Contract Documents which include the plans dated 05/05/20 and specifications dated May 2020 both of which are referenced below. All Work shall be done to the satisfaction of the General Contractor and the Project Architect ("AE"). The Scope of Work as defined in the Subcontract includes, but is not limited to the following:

**The SC is responsible for providing designated materials and manpower to safely perform the contract details on time and in workmanlike manor.**

**SC understands that additional manpower in the form of multiple crews and expanded work hours may be required to maintain the overall project schedule.**

**MATERIAL SCOPE**
1. All material per plans and specifications related to the Drywall Scope of Work including but not limited to:
   a. All drywall including but not limited to the following:
      i. 5/8" type X
      ii. 5/8" type X (C) GBW
      iii. 1/2" GWB
      iv. 1/2" WR
      v. 1/2" type X (C) GBW
      vi. Non-paper GWB at tubs and showers or MR drywall if it meets requirements
      vii. Denseglass may be substituted for drywall with current price difference in material
   b. Corner bead, 26-gauge galvanized steel
   c. All nails and fasteners including but not limited to nails (loose nails and nail gun nails), screws, lag bolts, bolts, staples, etc.
   d. Adhesives
   e. Joint tape
   f. Joint compound
   g. Resilient channels
   h. Grid System at tray ceilings

2. All equipment and labor to unload, stock and install materials. (forklifts, cranes, sky tracks, etc.)
3. All other material necessary to complete this Scope of Work to ensure that it complies with all passive house requirements

**LABOR SCOPE**
1. SC shall provide all labor related to the Drywall Scope of Work. All drywall shall be installed in accordance with plans, specifications and manufacturer's printed directions.

2. SC shall install all moisture-resistant drywall in all shower, bath, and other pertinent areas. Such/ areas shall be defined by the plans and the GC superintendent.

$\mathcal{MS}$ _____ Initials of the SC

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

# Exhibit A
## Scope of Work
## Drywall Labor & Material
## Kellinger Greene
### Page 2 of 7

3. SC shall "pre-rock" behind tubs, stairs, soffits, and any area that it is required. SC to complete after insulation is installed on exterior walls. Dense glass may be substituted at no additional labor cost

4. SC to install ½" drywall over the tub/shower flange and continue it to the ending of the wall.

5. SC shall install a grid system and drywall for tray ceilings where indicated in the drawings, including the drywall that is attached to the underside of the truss framing (above the grid system).

6. SC shall be responsible for removal and re-installation of any materials to include, but not be limited to windows, doors, insulation and railings, necessary for stocking drywall material. SC will confirm proper operation of windows with GC's superintendent immediately after using windows to stock drywall.

7. SC shall coordinate delivery, unloading and stocking of drywall. Drywall is not to be stockpiled on job site grounds. SC shall be responsible for damage done to any part of a building or building accessories due to careless stocking practices.

8. SC shall install all drywall and accessories per manufacturer's recommendations and as required by building plans and specifications. If a conflict arises, notify GC immediately upon discovery, in writing.

9. SC shall not install drywall on any bowed or twisted studs. SC shall, prior to installation, inspect all framing. Any defects will be reported to the GC superintendent immediately upon discovery. If SC applies drywall over any of these areas without authorization, SC will be responsible for the replacement of all drywall.

10. SC shall install and tape all drywall for tubs, showers, fire separations, draft stops, furnace closets, mechanical rooms, soffits, drips, chases and furnace platforms. SC shall seal any penetrations through firewalls or draft stops as noted on plans and as required by any building inspector. SC shall tape all fire separation walls including the roof line and wall plate as required by code. Drywall finish in a furnace or utility room is to be completed as if it is any other room. No gaps are to be left that cannot be fire caulked.

11. Fastening:
    a. Nailing: Per the UL Rated Assembly of the Wall Type which the drywall is covering but not less than:
        i. Fire-rated walls, bearing walls and fire rated ceilings: space nails along sides and in field along each stud at 7" o.c. with 6d cement-coated nails x 1-7/8" long with ¼" head
        ii. Non-fire-rated walls: Use double nail method. Space nails 8" o.c. along the sides. In board field, space 2 nails approximately 16" o.c. Nails to be 1-3/8" ring shank.
        iii. Non-fire-rated ceilings: Use double nail method. Space nails 7" o.c. along the sides. In board field, space 2 nails approximately 12" o.c. Nails to be 1-3/8" ring shank.
        iv. Non-fire-rated interior walls: use double nail method or full bead of approved glue with nails at 24" o.c. maximum along each stud.
        v. For double board application: use 8d cement-coated nails 2-3/8" long, 9/32" head

MLS Initials of the SC

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

## Exhibit A
## Scope of Work
## Drywall Labor & Material
## Kellinger Greene
## Page 3 of 7

  b.  Screw Attachment: Per the UL Rated Assembly of the Wall Type which the drywall is
      covering but not less than:
      i.   All ceilings and fire-rated walls:  8" o.c. along sides and 12" o.c. in field along each
           stud.
      ii.  All other walls:  12" o.c. along sides and 16" o.c. in field along each stud.
      iii. Use 1" Type S drywall screws for single board application to steel framing and 1-
           1/4" Type W for application to wood framing and 1-7/8" Type S drywall screws for
           double board application.
  c.  Caulk:
      i.   SC shall glue both bottom and top plate of all exterior and demising walls

12. Size wallboard appropriately and place horizontally or vertically, whichever results in fewer joints for
    taping. Nail at all studs as recommended by the manufacturer and minimum requirements above. Cut
    and install wallboard to eliminate any vertical joints at corner of door frames to ceilings. Hold drywall
    back 1/8" at rough openings and aluminum window frames.

13. All joints shall be taped and bedded with one coat drywall taping compound and a minimum of two
    coats of topping to be applied then sanded to a smooth level 4 finish.

14. SC shall use standard accessories at all corners and abutments.  Apply tape and compound at butt
    joints, internal corners and around all tub edges.  Apply joint treatment compound to conceal all
    accessories and fasteners and to close gaps at abutments, using a minimum of two layers.

15. All outside corners will receive metal corner bead clamped and nailed.  Nails to be a minimum 12"
    o.c.SC may use no coat corner bead if approved by submittal

16. Apply wallboard on ceilings at right angles to framing, using manufacturer's recommended fasteners
    and methods.

17. Bottom of windows and tops of half wall caps shall receive corner bead to drywall and framing
    member.  Thus, giving a smooth edge for caulking bead.

18. SC shall finish all ceilings flat and smooth to be paint ready.

19. All drywall on unit separation walls and interior walls are to run uninterrupted from floor to ceiling.

20. Unit separation walls, exterior walls, bearing walls and fire-rated walls are to have drywall
    continuously installed behind bathtubs, cabinets, soffits and fixtures, floor to ceiling.  Ceilings are to
    have drywall continuously installed behind fixtures, cabinets, soffits and dropped ceiling areas.

21. All finished products, such as windows, windowsills, tubs, showers, furnaces, hot water tanks, water
    supply lines, fireplaces, ductwork and doors will be covered or protected from drywall material
    installation.  Any damage to any of these items will be replaced at the expense of SC. Excess joint
    compound to be removed by SC.

$\underline{\text{M} \text{ } \text{S}}$  Initials of the SC

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

**Exhibit A**
**Scope of Work**
**Drywall Labor & Material**
**Kellinger Greene**
**Page 4 of 7**

22. SC shall reinstall all OSHA safety assemblies (including handrails at stairs) removed by SC upon completion of drywall task. Any OSHA assemblies not in place at time of drywall start should be reported to the GC superintendent immediately.

23. Drywall punchout is to be done after mechanical trades are completed. The GC superintendent will schedule drywall punches and the drywall foreman will supervise the quality and completion of the work to GC expectations. Drywall punch will commence upon a 48-hour notice. Yellow food coloring should be added to mud for punch out.

24. SC shall be responsible for all drywall scrap and related refuse. GC shall supply dumpster(s) at their cost and SC shall supply labor to properly clean all buildings from all drywall related construction debris daily.

25. By scrapping and sweeping, SC confirms all drywall finishing activities are complete to a level 4 finish and all gypsum is ready for paint. Non-conforming work that requires repainting will be repaired and repainted at the SC's expense

**GENERAL REQUIREMENTS:**
**DURATIONS;**

| Resp | Task Name | Loc | Dur | Projected Start |
|------|-----------|-----|-----|-----------------|
| DW | Pre-Rock | Bldg G | 4 days | Fri 10/30/20 |
| DW | Drywall hang (bldg G) | Bldg G | 8 days | Fri 12/11/20 |
| DW | Drywall Finish | Bldg G | 12 days | Tue 12/29/20 |
| DW | Pre-Rock | Bldg E | 3 days | Mon 11/16/20 |
| DW | Drywall hang (bldg E) | Bldg E | 7 days | Tue 12/29/20 |
| DW | Drywall Finish | Bldg E | 10 days | Tue 1/12/21 |
| DW | Pre-Rock | Bldg D | 4 days | Fri 11/27/20 |
| DW | Drywall hang (bldg D) | Bldg D | 8 days | Tue 1/12/21 |
| DW | Drywall Finish | Bldg D | 12 days | Tue 1/26/21 |
| DW | Pre-Rock | Bldg C | 4 days | Fri 12/11/20 |
| DW | Drywall hang (bldg C) | Bldg C | 8 days | Tue 1/26/21 |
| DW | Finish Drywall | Bldg C | 12 days | Tue 2/9/21 |
| DW | Pre-Rock | Bldg B | 4 days | Thu 12/24/20 |
| DW | Drywall hang (bldg B) | Bldg B | 8 days | Tue 2/9/21 |
| DW | Drywall Finish | Bldg B | 12 days | Tue 2/23/21 |
| DW | Pre-Rock | Bldg A | 3 days | Thu 1/7/21 |
| DW | Drywall hang (bldg A) | Bldg A | 7 days | Tue 2/23/21 |
| DW | Drywall Finish | Bldg A | 10 days | Tue 3/9/21 |
| DW | Pre-Rock | Bldg F | 3 days | Wed 1/20/21 |
| DW | Drywall hang | Bldg F | 7 days | Tue 3/9/21 |
| DW | Drywall Finish | Bldg F | 10 days | Tue 3/23/21 |

MLS ___ Initials of the SC

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

**Exhibit A**
**Scope of Work**
**Drywall Labor & Material**
**Kellinger Greene**
**Page 5 of 7**

**WARRANTY:**

1. SC will provide a minimum 1-year guarantee on all material to be defect-free and provide a 1-year warranty for all labor, etc. At the time of any retainage due, the GC shall not release retainage until the SC has satisfactorily addressed any outstanding warranty issue.

2. SC will guarantee that all Work performed and installed will meet and comply with all applicable federal, state, county, and local building codes and standards, as well as all applicable federal statutes and regulations including but not limited to those under the American with Disabilities Act ("ADA"), Fair Housing Regulations, the Uniform Federal Accessibility Standards ("UFAS"), and all State, Local, and Federal Environmental Protection Agency ("EPA") requirements.

3. SC is required to respond to all warranty claims as outlined in the Contract Documents.

4. SC will provide all pertinent manufacturer warranty information to GC.

**MANDATORY REQUIREMENTS:**

1. In the event the SC discovers what it believes are discrepancies, contradictions or ambiguities in the Contract Documents involving its Work the SC shall immediately notify the GC in writing. The GC shall then provide written instructions as to how the SC shall proceed. In the event the SC proceeds with the Work at issue prior to its receipt of written clarification and instruction from the GC the SC shall be responsible for all costs and expenses incurred to have the Work redone in the event the AE rejects it as not conforming to the Contract Documents.

2. SC shall timely provide submittals to the GC with respect to all materials it intends to use in the performance of its Work. Any proposed substitutions shall be noted on submittal cover sheet along with an explanation as to why the substitution is being submitted. Any materials that are used in performing the Work prior to the SC receiving written approval from the GC shall be replaced by the SC at its cost and expense should those materials be unacceptable to the GC or AE. Timely related to the submittals shall be ten (10) business days after the SC execution of the Subcontract. In the event the GC has not received the submittals within the ten (10) days noted herein, the GC may exercise its notice and cure provisions along with those penalties as noted in section 10 of the subcontract.

3. With respect to its Scope of Work the SC shall provide materials and equipment that meet all criteria set forth for **Sustainable/Green Design Requirements as required by the Contract Documents.** Program Names may include, but are not limited to LEED, Enterprise and Earthcraft.

4. All calculations and determinations as to material quantities are the responsibility of the SC. Any miscalculations or errors in the calculations or measurements shall be corrected by the SC at its cost and expense.

5. The following are prohibited in any residential structure of the Project after the commencement of the project work: smoking, food, the burning of diesel fuel for any purpose, any other act which will create a long-term smell in the units.

MUS____ Initials of the SC

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

## Exhibit A
## Scope of Work
## Drywall Labor & Material
## Kellinger Greene
## Page 6 of 7

6. SC shall adhere to all Safety Regulations set forth by O.S.H.A., the state and local governments, and GC. Hard hats and safety glasses must be worn at all times. SC shall provide all fences, barricades, bridges, railings and guards for protection of workmen and the public. No SC employee shall ever wear tennis shoes on the job site.

7. SC shall provide protection of its Work against damage from vandalism, theft and weather or other damage. SC will install, maintain and remove upon completion of the Work all such protection. SC shall repair or replace all damaged or stolen items. SC, to the exclusion of the GC, shall be responsible for safeguarding its equipment and apparatus while on site

8. SC shall be required to wear boot covers when entering all completed units.

9. SC shall store all materials in a suitable manner and on skids up off the ground. All materials will also be stored under cover or waterproof membranes as required to protect from rain, snow, or frost.

10. SC shall protect all adjacent property from damage from construction operations or water run-off. No construction operations are to be beyond property line, or approved easements and right-of-ways.

11. SC shall deliver to the GC, at the GC's on site superintendent as well as to the GC's home office all M.S.D.S. material sheets for material used in the performance of its Work.

12. SC shall supply GC with their Hazardous Material (Hazmat) Program and supply any documents that accompany that program.

13. SC shall, on a weekly basis, conduct a safety meeting and/ or attend safety meetings held by the GC and supply to the GC a copy of all minutes of the meetings.

14. SC shall provide written input for the GC project schedule at the beginning of the project. Input shall include a basic outline of manpower and onsite equipment, what Work the SC expects to complete each week and expected completion date for all its Work. SC input will be reviewed by GC project team and utilized to create the project schedule. SC input is NOT to be considered the contract schedule. GC will provide project schedule to which SC is to adhere and update schedule weekly. SC shall review the GC project schedule and report any difficulties in meeting the schedule to the GC. SC shall provide sufficient manpower to meet the project schedule. GC reserves the right to change/disregard SC input to meet Performance Time as set forth in the Contract Documents. SC is responsible to assure that all materials are delivered, unloaded, stocked/stored in an area approved by the GC and installed in a timely manner. Any additional costs incurred by the GC or the SC due to an unapproved delay in performing its Work shall be the responsibility of SC.

15. SC shall provide sufficient labor to timely complete the Work.

16. SC shall provide, at its cost, all labor, equipment, and material, unless otherwise noted, to timely complete its Work.

17. SC shall complete its Work to the satisfaction of the AE, the GC and the Contract Documents

$M_{L}$ Initials of the SC

Exhibit A

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Rev. 08/18/20

**Exhibit A**
**Scope of Work**
**Drywall Labor & Material**
**Kellinger Greene**
**Page 7 of 7**

18. SC will attend mandatory on-site meetings as scheduled by the GC and as outlined in the subcontract. The construction schedule will be discussed at each meeting.

19. All employees of the SC are required to sign in at the GC field office or designated area daily as outlined in the subcontract. If employees do not sign in GC may fine SC $50/day.

20. SC will keep the Project site free from scrap building materials at all times. With respect to SC's Work, the Project site shall be cleaned up daily and all scraps related to the Work shall be moved to the dumpster (provided by GC). If a cleanup is not performed each day the SC is on the jobsite, the GC shall warn the SC and then may levy a $100 per day Back charge.

21. Upon completion of the Work, SC shall remove all excess material, equipment, waste and/or anything else related to the Work of the SC from the Project site. Debris, material and other items remaining on the Project site after SC's completion may subject the SC to a $100 per day and cost of removal Backcharge.

22. With respect to the work, the SC is responsible for the scheduling of all required by all applicable governmental entities. If any inspection should fail SC will be responsible for an additional inspection fees SC is also responsible for correcting failed inspections in a timely matter so as not to delay the project work and schedule for completion.

23. SC will be responsible for the costs to replace or repair any Project work or structures damaged and for expenses incurred by the GC resulting from the SC's acts.

24. The SC shall provide an on-site job foreman. The foreman will continually stay in direct contact with the GC superintendent and attend all inspections. The foreman shall be fluent in the English language.

25. All delivery vehicles, heavy duty construction vehicles, large trucks, and equipment will be required to use the construction entrance only. Use of private entrances is forbidden. SC to coordinate these deliveries with GC Superintendent

26. Setting of tools or equipment on finished countertops, toilets and tubs is prohibited and will not be tolerated.

27. SC will not be permitted to use bathroom facilities in any unit or community area of the Project. SC is only to use temporary bathroom facilities provided by the GC. SC may be subject to a $100 Backcharge if employees use or evidence of use is found in any bathroom facility.

28. No sleeping is permitted in any unit by anyone prior to owner use. If any SC is caught using any unit for lodging, the SC will be subject to a $100 per person, per day Backcharge.

29. SC shall provide a list of unit prices for labor within one week of Contract signing.

I have completely read and understand this Scope of Work as well as the Contract Documents and will comply with all requirements in the performance of the Work.

_____          9-25-2020
Subcontractor                                      Date

_____ Initials of the SC

Exhibit A

**S E L E C T I V E**
BE UNIQUELY INSURED℠

James Kirk
Litigation Specialist
P.O. Box 7264
London, KY 40742
(610) 706-3056
Fax (877) 233-1355

March 2, 2023

Dillon McCandless King Coulter & Graham L.L.P.
Attn: Robert Galbraith
600 Cranberry Woods Drive Suite 175
Cranberry Township, Pa 16066

Re:      Your Insured:       Woda Construction, Inc.
         Your Claim No.:     N/A
         Our Insured:        J&J & Sons Drywall, LLC.
         Our Claim #:        22411407
         Date of Loss:       1/15/2021
         Suit Caption:       Paul Corrigan vs. Woda Cooper Companies Inc., Woda Construction
                             Inc., Woda Cooper General Partner LLC., Kellinger Greene GP LLC,
                             and J&J & Sons Drywall LLC

Dear Mr. Robert Galbraith,

As you know, I am a Litigation Specialist employed by Selective Insurance Company of America. I am responsible for handling this claim and determining what coverage may be available under the terms of the insurance policy purchased from Selective.

You have requested additional insured coverage for Woda Construction, Inc. ("Woda") under the Selective policy of J&J & Sons Drywall, LLC. (J&J) for the lawsuit which was filed on behalf of Paul Corrigan. Our understanding is this lawsuit was commenced in the York County Court of Common Pleas under docket number 2202-SU-002344 listing Woda Cooper Companies Inc., Woda Construction Inc., Woda Cooper General Partner LLC., Kellinger Greene GP LLC, and J&J & Sons Drywall LLC as defendants. The complaint was filed on September 29, 2022 and alleges that the plaintiff fell while descending a ladder when the ladder gave-way.

I have had an opportunity to review the subcontract between Woda and J&J, as to your additional insured request and our policy. In review of the subcontract I have reviewed Section J. which reads:

> Additional Insured: All subcontractors working on the project shall name Woda Construction, Inc. and its related entities as an additional insured on a primary basis and must be maintained during the statute of limitations where work is being performed.

Under our insured's policy provisions; the General Liability Extension Endorsement CG 7300 01/16 edition indicates:

**Blanket Additional Insureds - As Required By Contract**

Exhibit B

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Subject to the Primary and Non-Contributory provision set forth in this endorsement, SECTION II - WHO IS AN INSURED is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.  Your ongoing operations, "your product", or premises owned or used by you;
    With respect to the insurance afforded to these additional insureds, the following additional exclusion applies:
    This insurance does not apply to:
    "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services by or for you, including:
    a.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or and
    b.  Supervisory, inspection, architectural or engineering activities.
2.  Your maintenance, operation or use of equipment, other than aircraft, "auto" or watercraft, rented or leased to you by such person or organization. A person or organization's status as an additional insured under this endorsement ends when their contract, or agreement with you for such rented or leased equipment ends. With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the rental agreement or equipment lease expires.

    The provisions of this coverage extension do not apply unless the written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

**Primary and Non-Contributory Provision**

The following is added to Paragraph 4. Other Insurance, b. Excess Insurance under SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:

This insurance shall be excess with respect to any person or organization included as an additional insured under this policy, any other insurance that person or organization has shall be primary with respect to this insurance, unless:

(1) The additional insured is a Named Insured under such other insurance;
(2) You have agreed in a written contract, written agreement or written permit to include that additional insured on your General Liability policy on a primary and/or non-contributory basis; and
(3) The written contract or written agreement has been executed (executed means signed by the named insured) or written permit issued prior to the "bodily injury" or "property damage" or "personal and advertising injury".

As to your Additional Insured Request, the subcontract does indicate that the Woda Construction, Inc. shall be named as additional Insured under the policy. However, the contract does not call for Additional

Exhibit B

**York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM**
**Case Number: 2025-SU-002772**

Insured status to be on a primary and non-contributory basis. Based on the above cited policy language our position is in order for the J&J & Sons Drywall, LLC. policy to be primary the contract must have the primary and non-contributary language. Since the contract does not have the necessary non-contributory language our position is that we are willing to share in the cost of defense on a 50/50 basis.

As to your request for Indemnification:

The indemnification section of the contract indicates:

Indemnification. To the fullest extent by law the Subcontractor shall indemnify, defend and hold harmless Woda Construction Inc., Owner, Architect, Engineers, Architect's consultants, and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Work but only to the extent caused by the negligent acts or omissions of the Subcontractor, a Sub-Subcontractor, or anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

The subcontract does not request for indemnification of "Woda Construction, Inc's." own negligence and therefore the Perry-Ruzzi Standard is not met. Additional discovery will need to be secured prior to reconsideration of your defense and indemnification request.

As outlined above, based on the above cited policy language our position is in order for the J&J & Sons Drywall, LLC. policy to be primary the contract must have the primary and non-contributary language. Since the contract does not have the necessary non-contributory language, our position is that we are willing to share in the cost of defense on a 50/50 basis.

Please advised me at your earliest opportunity if you agree to these conditions. If you have any additional documents that you would like me to review for consideration, please send them to my attention.

Sincerely,

James Kirk

Exhibit B

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

Litigation Specialist

cc: J&J & Sons Drywall

Knoll Insurance Agency Inc.

Exhibit B

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

## VERIFICATION

I verify that the statements of fact made in the foregoing document are true and correct to

the best of my knowledge, information and belief. I understand that the statements made herein

are subject to 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

Date: 7 | 23 | 25

Christopher L. LaGrand,
Senior Vice President and Corporate General
    Counsel for Woda Cooper Companies, Inc.
Authorized Representative of Woda Construction,
    Inc.
Authorized Representative of Woda Cooper
    General Partner, LLC
Authorized Representative of the Managing
    Member of Kellinger Greene GP, LLC

York County Prothonotary E-Filed - 29 Jul 2025 03:51:42 PM
Case Number: 2025-SU-002772

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the

Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that

require filing confidential information and documents differently than non-confidential

information and documents.

Respectfully submitted,

DILLON McCANDLESS KING
COULTER & GRAHAM L.L.P.

/s/ Ronald T. Elliott
Ronald T. Elliott
Attorney for Defendant
PA I.D. No. 71567
Telephone: (724) 283-2200

US POSTAGE~~PITNEY BOWES

$ 013.54⁰
AUG 05 2025

ZIP 16001
02 7H
0006107338

FIRST·CLASS

FIRST·CLASS
FIRST·CLASS
FIRST·CLASS
FIRST·CLASS
FIRST·CLASS
FIRST·CLASS
FIRST·CLASS

# FIRST CLASS MAIL

McCandless King Coulter & Graham L.L.P.

ATTORNEYS AT LAW

128 West Cunningham Street
Butler, Pennsylvania 16001

Selective Insurance Co. of America
40 Wantage Ave
Branchville, NJ 07890



PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®



589 0710 5270 0385 4736 56